UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| RICARDO MARTÍNEZ-MORALES and<br>IVÁN MONTALVO-NIEVES<br><br>  Plaintiffs,<br><br>  v.<br><br>IRIS LÓPEZ-SÁNCHEZ, et al.,<br><br>  Defendants. | Civil No. 09-1845 (JAF) |

**OPINION AND ORDER**

Plaintiffs, Ricardo Martínez-Morales and Iván Montalvo-Nieves, bring this action under 42 U.S.C. § 1983, claiming that Defendants, Iris López-Sánchez, John Doe, and the conjugal partnership between them, acted under color of state law to deprive them of their constitutional rights under the First and Fourteenth Amendment. (Docket No. 1.) Plaintiffs also claim violations of their rights under Article Two of Puerto Rico's Constitution. (Id.) Defendant López-Sánchez moves for summary judgment (Docket No. 29), which Plaintiffs oppose (Docket No. 44). Plaintiffs move for partial summary judgment, on their Fourteenth Amendment claims (Docket No. 30), and López-Sánchez opposes (Docket No. 41).

**I.**

**Factual and Procedural Summary**

We derive the following factual summary from the parties' statements of fact and accompanying exhibits. (Docket Nos. 28; 31; 46.) Plaintiffs were employed as security guards at the central office of Puerto Rico's Administration for Future Workers and Entrepreneurs

Training ("AFWET"). AFWET hired Plaintiffs as irregular employees[1] using funds secured from the Employment Opportunities Development Fund, commonly known as "Law 52 funds." See 29 L.P.R.A. § 711c (creating the fund to be administered by the Department of Labor and Human Resources). Two additional security guards worked at the central office in career positions. The former administrator of AFWET, Eduardo Vergara-Agostini, initially signed a six-month contract with the secretary of the Department of Labor and Human Resources to create 128 positions in AFWET. This contract was to end on December 31, 2008, but the parties amended it to extend until March 31, 2009, and to fund an additional sixteen jobs. Prior to these amendments to the contract, however, Vergara-Agostini extended Plaintiffs' employment contracts until June 30, 2009. No Law 52 funds were allocated for this extension.

On January 2, 2009, López-Sánchez was sworn in as the new administrator of AFWET. Soon thereafter, she was informed by her staff that AFWET would not receive further Law 52 funds and that it had funds to cover only part of the January payroll. López-Sánchez transferred all employees who had been paid with Law 52 funds to the general payroll account; this account, however, was also running a deficit in excess of half a million dollars. López-Sánchez wrote a letter to the director of the Office of Budget and Management, requesting additional

---

[1] As defined by Puerto Rico law, irregular government personnel are those employees hired for fixed durations "when the conditions and/or the nature of the work render impracticable the creation of positions, as this term is defined in the Personnel Act." 3 L.P.R.A. § 711 (2003). The Personnel Act, a precursor to the current civil service legislation, defined a "position" as full- or part-time employment to which the hiring criteria and protections of the merit-based civil service applied; such position would be held by a "regular employee." Personnel Act, Act No. 345, 1947 P.R. Laws 596 (repealed 1975). The most recent iteration of Puerto Rico's civil service legislation, the Public Service Human Resources Administration Act, 3 L.P.R.A. §§ 1461–1468, abandoned the nomenclature of regular/irregular employees and instead recognizes three types of employees: career, confidential or transitory. All employees hired for fixed durations, including for non-skilled or semi-skilled jobs, are "transitory employees." § 1462b(i), (k).

funds to cover AFWET's budget deficit, which was projected to exceed two million dollars by June 30, 2009. The Office of Budget and Management did not grant this request, and López-Sánchez was unsuccessful in other attempts at securing funding to cover this deficit.

López-Sánchez claims that when faced with these budget deficits—and in light of the impending passage of Law 7, which would direct agencies to terminate all irregular employees—she decided to terminate irregular employees who did not provide direct services to the population served by AFWET, disadvantaged youths. See 18 L.P.R.A. § 1412 (2005) (stating AFWET's mission). Accordingly, AFWET's human resources office prepared a list of all irregular employees for López-Sánchez's review. Plaintiff Martínez-Morales received a letter on March 6, 2009, announcing his termination. Plaintiff Montalvo-Nieves received a similar termination letter on March 6, 2009. Both were terminated summarily, without opportunity for a hearing. A private security firm contracted by the previous administration provided additional security in the wake of Plaintiffs' terminations. An additional irregular employee who worked in the human resources department and, thus, did not provide "direct services," was terminated two months later in May 2009.

On August 25, 2009, Plaintiffs filed this suit, claiming that their terminations ran afoul of the U.S. Constitution and various Commonwealth statutes. Central to Plaintiffs' claims is that they were terminated because of their political affiliations and were not given a pre-termination hearing. Plaintiffs are both members of the Partido Popular Democrático ("PPD"), while López-Sánchez is a member of the Partido Nuevo Progresista ("PNP"). Plaintiff Martínez-Morales claims that he overheard López-Sánchez make a statement in the hallway to the effect that "heads of many employees were going to roll" and that the heads in question were

of those employees who had been employed by the previous, and PPD-affiliated, administrator. (Docket Nos. 28-28; -29.) On this point, Martínez-Morales' testimony might be described as equivocal at best. When first asked if he heard López-Sánchez make this statement, he answered, "[López-Sánchez] expressed it to a coworker and that coworker expressed it to us." When pressed on whether he heard it directly, he states, "No, she didn't tell me directly. She said it in a way for everyone to hear it . . . ." Eventually, Martínez-Morales clarifies, "I heard it said. I heard it said in the hallway and I was with another coworker."

Martínez-Morales stated that he had never told López-Sánchez his political affiliation and that his contact with her was limited to a single discussion of security issues and a request to sign a document. He believed, however, that she knew of his affiliation with the PPD because he talked to people who were party sympathizers, he actively participated in the party, and both he and former administrator Vergara-Agostini were from the town of San Sebastian.[2] Furthermore, Martínez-Morales believed that López-Sánchez's constant "scolding . . . for no reason at all" was a demonstration of her politically-motivated animus. (Docket No. 28-3.)

Before his termination, Montalvo-Nieves heard gossip that maintenance and reception staff would be fired because they were PPD members. He did not hear López-Sánchez make any comments regarding retaliation against PPD members. (See Docket No. 28-33.) He also stated that López-Sánchez did not know his political affiliation. (See Docket No. 28-34 ("Q: Does Iris López know your political affiliation? A: No.").) He believes, however, that "she

---

[2] Prior to being appointed administrator, López-Sánchez had succeeded in her own political discrimination action against Vergara-Agostini for wrongful termination.

thought I was among the people from the PPD and she thought that perhaps had caused her harm." (Docket No. 28-33.)

## II.

### Summary Judgment Under Rule 56

We must grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The movant may satisfy this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, to establish the absence of a genuine dispute of material fact, the movant need not produce evidence but may instead point to a lack of evidence supporting the nonmovant's case. See Fed. R. Civ. P. 56(c)(1)(B); see also Celotex, 477 U.S. at 325. "Once the moving party has made a preliminary showing that no genuine [dispute] of material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(1).

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the nonmovant. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51 (2000). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III.

## Analysis

Plaintiffs claim they were terminated because of their political association, in violation of their First Amendment rights. They also claim that they were deprived of employment without due process of law. Finally, they claim violations of Puerto Rico's bill of rights. We treat each claim in turn.

### A. Political Discrimination

The First Amendment protects government employees who are not in "policy-making positions of confidence" from adverse employment actions based upon an employee's political affiliation. Montfort-Rodriguez v. Rey-Hernandez, 504 F.3d 221, 224 (1st Cir. 2007) (quoting Borges Colon v. Roman-Abreu, 438 F.3d 1, 14 (1st Cir. 2006)). In order to make out a prima-facie case of political discrimination, a plaintiff must point to "sufficient direct or circumstantial evidence from which a jury reasonably may infer that [her] constitutionally protected conduct—in this case, political affiliation . . . was a 'substantial' or 'motivating' factor behind" an adverse employment action. Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993).

If a plaintiff succeeds in establishing the prima-facie case, the burden of persuasion shifts to the defendant to demonstrate, by a preponderance of the evidence, that the plaintiff would have been dismissed regardless of her political affiliation. See Mt. Healthy City Sch. Dist. Bd.

of Educ. v. Doyle, 429 U.S. 274 (1977); Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 130–33 (1st Cir. 2004) (discussing the Mt. Healthy defense and the necessity for a plaintiff to prove that her political affiliation was a "but for" cause of the adverse employment action).

Plaintiffs cannot meet the burden of a prima-facie case of political discrimination without demonstrating that López-Sánchez knew of their membership in the PPD. Plaintiff Montalvo-Nieves flatly states in his deposition that López-Sánchez did not know his political affiliation. He later speculates that López-Sánchez was aware of his party membership, but he offers no reason why she would be aware of it. In their opposition to summary judgment, Plaintiffs argue that López-Sánchez inferred Montalvo-Nieves' party affiliation from his relationship with Martínez-Morales, but Plaintiffs point to no evidence establishing what relationship the two had and why it would lead López-Sánchez to believe they shared a political affiliation. As such, Plaintiff Montalvo-Nieves has failed to create a trial-worthy issue as to López-Sánchez's knowledge of his political affiliation. See Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (noting that a plaintiff may not rely on "conclusory allegations, improbable inferences, and unsupported speculation" to defeat a summary-judgment motion).

Plaintiff Martínez-Morales likewise fails to present evidence from which a jury could reasonably infer that López-Sánchez was aware of his PPD membership. The fact that Martínez-Morales is from the same town as the former administrator and is an active member of his party does not create a reasonable inference that López-Sánchez knew of his political affiliation. Plaintiffs do not even show that López-Sánchez knew what town Martínez-Morales was from, much less explain how it logically follows that a jury can reasonably infer knowledge of political affiliation from his town of origin. Such an inference is not necessarily impossible

but would require detailed and substantial evidence of political participation in San Sebastián. Here, we have only the assertion that both Martínez-Morales and the former administrator were from the same town and belonged to the same party. An inference of political affiliation cannot be supported by such flimsy evidence. See id.

**B.    Due Process**

Plaintiffs claim a property right in their employment through the end of their contract period. They allege that the failure to give them a hearing or other opportunity to respond to their dismissal was a violation of due process.

Due Process requires that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). State employees holding a legally-protected property interest in their employment generally must be given a pre-termination hearing before they are dismissed for cause. See id.; Whalen v. Mass. Trial Court, 397 F.3d 19, 25 (1st Cir. 2005). A hearing is not required, however, where a "reorganization or other cost-cutting measure" was the cause of the employees' dismissal. Whalen, 397 F.3d at 24. This "reorganization exception" to the standard notice-and-hearing requirement applies when a termination is "in good faith directed at positions rather than individuals." Id. at 25 (quoting Hartman v. Providence, 636 F. Supp. 1395, 1409 (D.R.I. 1986)).

Assuming, for the sake of argument, that Plaintiffs have a legally-protected property interest in their employment, they have failed to establish a genuine dispute of material fact as to whether their terminations were directed at them personally, as opposed to their positions.

There is no dispute on the record as to the budget deficits faced by AFWET or the economic realities the Commonwealth faced at that time. Plaintiffs argue that López-Sánchez hired a private security firm to take over Plaintiffs positions and paid them at a greater cost. López-Sánchez's deposition testimony is clear, however, in stating that after Plaintiffs were fired, a third security guard (out of the original four) left. López-Sánchez turned to the security firm, contracted by the previous administration, to provide two guards at night. López-Sánchez states that this was a cost-saving measure because she concurrently cut the security details provided by this company to AFWET's satellite offices. Plaintiffs have not produced evidence to contradict López-Sánchez's explanation.

We recognize that the "reorganization exception" does not apply where plaintiffs have raised a genuine dispute that the reorganization or cost-cutting was merely pretext masking a termination "for cause" or for an impermissible motive. See Whalen, 397 F.3d at 25 n. 5. Here, however, there is no evidence on the record from which a jury could reasonably infer that López-Sánchez's cost-cutting was pretext. The budget deficits faced by AFWET and the larger Commonwealth government are not disputed. Moreover, Plaintiffs have not succeeded in their claims that they were terminated due to political animus. Plaintiffs note, however, that a transitory employee in AFWET's human resources office was not fired until May 2009. We do not find this gap in time between terminations sufficient to create a trial-worthy issue as to pretext.

**C.     Supplemental Claims**

As we dismiss both of Plaintiffs' federal claims, we decline to consider their supplemental claims under Article II of the Constitution of Puerto Rico. See 28 U.S.C.

Civil No. 09-1845 (JAF) -10-

§ 1367(c)(3); <u>González-De-Blasini v. Family Dept.</u>, 377 F.3d 81, 89 (1st Cir. 2004) (stating that a "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction").

## IV.

## Conclusion

For the foregoing reasons, we hereby **GRANT** López-Sánchez's motion for summary judgment (Docket No. 29) and dismiss all claims. We **DENY** Plaintiffs' motion for summary judgment (Docket No. 30).

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 22nd day of December, 2010.

                                              s/José Antonio Fusté
                                              JOSE ANTONIO FUSTE
                                              Chief U.S. District Judge